Our second case this morning is Minnikin-Reth-Johnson v. Attorney General. Ms. Urban? Good morning, Your Honors. May it please the Court, Jessica Urban for Petitioner Minnickin-Johnson. At the outset, I'd request that five minutes of my time be reserved for rebuttal. Granted. Your Honors, the question before this Court at this stage comes down to the appropriate remedy for the undisputed legal errors that the Board of Immigration Appeals committed in this case. More specifically, the BIA's erroneous conclusion that Mr. Johnson's marijuana offense was an aggravated felony that categorically precluded him from asylum. As the Court is aware, the government has never defended the merits of the BIA's position in this case, and it couldn't do so. Under this Court's precedent and under Supreme Court precedent, a marijuana offense, possession with intent to distribute marijuana, is not an aggravated felony when the record of conviction does not establish either remuneration or more than a small quantity of marijuana. If we agreed with you on the aggravated felony issue, you want us to reinstate what the I.J. did, and the government wants a general remand so that they can perhaps relitigate that issue, although they don't seem to say that specifically. But there was a second issue that was not reached by the BIA, and that was the eligibility for asylum. So even if you're right on aggravated felony, don't we remand back for a determination of focusing on the particularly serious crime aspect? No, Your Honor, and that's where the dispute between the parties lies. It is our position that because the government had never raised before the BIA when it was first there, when it was the appellant, any other concerns other than the aggravated felony issue, it never raised a concern that his offense might nonetheless be particularly serious. It never challenged his entitlement to asylum under the discretionary analysis. It only focused on the aggravated felony issue. Because it never raised that issue as the appellant, it is not entitled to seek a remand to argue those issues more specifically. The only remand that should occur in this case would be to order the BIA to reinstate the grant of asylum. The government had waived the position, and this Court has repeatedly held that when an appellant does not raise an issue below, it's not entitled to do so later. That's the struggle in this case. Was it completely ignored, or was it raised perhaps in an inartful way? Your Honor, it's our position that it was not raised below. If you take a look at the government's briefs before the BIA, and if you look at the Notice of Appeal, it was focusing only on the aggravated felony issue. The government's brief presents two issues, both focusing on whether the burden of proof had been met to show that there was an aggravated felony that categorically precluded him from asylum. The government had never raised that there might be an additional issue, and it's our position that that was for good reason, that under the law of this circuit, there wouldn't be anything further to decide on the merits, who would also win. But there's no need to remand. The BIA, I'm sorry, finish that. There's no need to remand when the law is clear and when the government already had an opportunity but declined to pursue it at that stage, and is instead seeking piecemeal litigation. Assuming we were to remand it on that basis, it doesn't appear that the BIA thinks too much of our decision in Alaca, because they contend that because we did not find an unambiguous reading here that we should have, we still have to defer to the reasonable interpretation of the BIA. Why aren't they right about that? If you look at the language of the statute withholding of removal or the asylum statute itself, the language is clear. And even if in Alaca this court didn't explicitly say that, this court is entitled to make the decision. The Board of Immigration Appeals had even invited this court to resolve that issue and clarify whether the statute was clear. If you look at the statute itself, you see that a crime needs to be either an aggravated felony or there needs to be a regulation by the Attorney General classifying that non-aggravated felony as particularly serious in order to constitute a categorical bar to asylum. And neither is the situation here. Excuse me, I'm sorry. Isn't that a permissive part of the statute, that is, the regulations could be adopted doing that, but it seems to me it's not necessary. It's permissive in the sense that the Attorney General is not required to consider any other aggravated felony. Under the statute, it's sufficient if a crime is an aggravated felony. The discretion is only to allow the Attorney General the additional option of imposing by regulation additional crimes. And there's no dispute that the Attorney General has not done so in this case. The language of the statute is clear, and a crime that is not an aggravated felony cannot serve as a categorical bar to asylum. And it's not just the decisions of Scrivett and other cases that we cite in our brief. Other courts of appeals have held that the government is not entitled to a remand for further consideration of challenges to a petitioner's claims for asylum, especially when the immigration judge has previously granted that asylum. If the government hasn't raised those issues below, that issue is waived. That's certainly the general rule, but as I understand the government's position, they cite Moncrief and say, well, you know, it's a recent Supreme Court decision. Things have changed. So why should they be bound by a record? Or why should the record remain fixed in stone in light of Moncrief as relevant supervening authority? Well, the government does say that Moncrief is a new decision, and there's no dispute about that. It did come down after the Board of Immigration Appeals. What the government has not argued is that it actually changed the law. And if you take a look at the Moncrief decision itself, the Supreme Court recognized that it was not changing the law of the Third Circuit, the law that bound the BIA at the time it considered Mr. Johnson's case. Under this court's precedent in June, in which Judd Roth was a member. If you look at Evanson back from 2008, if you look at Wilson, if you look at Steele, all of those cases clearly held that possession with intent to distribute marijuana is not an aggravated felony when the record of conviction doesn't establish either remuneration or more than a small amount of the offense. And if you look at Kaporler by this court with Judge Sirica, non-precedential, but nonetheless again recognizing there was no change to the law in Moncrief. That may have changed the law of other circuits, but not here. All right, so if I understand your response, you're saying that Moncrief does nothing for them on the serious crime issue. It's just not germane to that. And with respect to the first issue, aggravated felony, it's more of the same. Exactly. That's correct. And it's not just a matter of this court's precedent and decisions of other courts of appeals holding that there's no entitlement for DHS or the government to have an unlimited remand so that it can belatedly raise other challenges to the grant of asylum. It's also matters of promoting judicial economy, fairness to the litigants, and to the agencies in the courts as well. The government has, we have the resources of federal government here. Councils who are specializing in immigration law on one hand, they have the opportunity to raise these challenges below. On the other hand, you have Mr. Johnson, appearing pro se before this court until he was appointed pro bono counsel in immigration detention for three years while the government was seeking to have a remand, presumably so that the BIA would just have another opportunity to consider exactly what it had before it before. In this circumstance, it's not fair to Mr. Johnson. It's not fair to other litigants who are being held in immigration detention, not able to work and support their U.S. citizen families, to remand for further yo-yoing between the agency and the court of appeals. Let me ask you this. Let's assume the government convinces us that there was no waiver on the second issue. And why should we decide it instead of sending it back to the BIA? It's a matter of efficiency. It's a matter of fairness. There's nothing further that the BIA needs to do in this case. The issues have been fully briefed. It's just a matter of legal error. And this court has held that when an issue is clear, when an agency below has indisputably erred legally, then it's the function, it's the responsibility of the court. Let's assume we are with you on the error on aggravated felony, but how do we know the They never addressed it. Right. How do we know that we would be getting it right on the particularly serious crime aspect? We have the ALACA decision from this court. If you're looking at the plain language of the statute, again, there was a waiver here by the government. It's not entitled to be raising these issues below. We're assuming that's not Judge Sirica's question, premise, that you don't win on waiver. We're asking you to address the substance. Why wouldn't it be typical to send it back for initial consideration in the agency on an issue, particularly serious crime issue, that is somewhat in debate when you compare our decision in ALACA with what the BIA subsequently did? It's our position that there shouldn't be any debate on this issue. A court is responsible for saying what the law is. If the statute is ambiguous, there's no room for deference to the agency. That's the case here. To the extent the BIA thought this was an open question, that there may be some ambiguity or room for its consideration, it's our position that that is not correct. Looking at the statute, it's clear that Mr. Johnson's offense was not particularly serious. It was not an aggravated felony and that he's entitled to have his grant of asylum reinstated as the immigration judge properly found. All right. Thank you, Ms. Ervin. Thank you. We'll hear you on rebuttal. Mr. Bernstein. Good morning, Your Honors, and may it please the Court, my name is Jeffrey Bernstein and I represent the Attorney General and this microphone is much too close to me. Let me just, before I launch into the argument that I had planned, let me just address two things that were implicated in my colleague's argument. Number one is, as the petitioner acknowledged in his reply brief, Mr. Johnson has not been detained since, he's no longer in custody, and that's been since, I believe, October of last year. The second thing is, very quickly, and I'm happy to discuss it if the Court wishes before I launch into my argument, but on page 28 of the administrative record, which is a page in the petition, excuse me, in the government's appeal brief to the Board, the Department of Homeland Security argues, however, even if the Department of Homeland Security were unable to meet its burden in sustaining the aggravated felony charge, the respondent has the burden to establish by a preponderance of evidence that he satisfies applicable eligibility requirements for asylum to include not being convicted of a particularly serious crime. So the government did identify the particularly serious crime issue before the Board. Turning to the argument, which I'd like to make. Just let's pause on that one for a second. Where was it identified? You said, you used the word identified, which may be a term of art. Was it, how specifically was it raised? It was raised in the provision of the brief which I quoted. It was not discussed in any other component, but it was identified for the Board as an issue which had to be resolved before determining this petitioner's eligibility for asylum. Where was it raised at the hearing? I don't believe that particularly serious crime was a component of the hearing, but it doesn't matter for an alien or the government to have exhausted. It only is required that the alien or the government raise it in the administrative proceeding. Now the Board, if an alien or the government chooses not to raise a legal issue before the immigration judge and attempts to bring it before the Board, the Board certainly has the authority to reject it, but the Board certainly didn't do so in this case. So we believe it was raised, and it was raised by the language that I am quoting. And even if it wasn't raised, we'd certainly take the position that the alien having the burden of proving eligibility for all relief from removal, including asylum, the question whether or not there is a bar to relief is always a question that the Board or the immigration judge must consider before- Isn't it generally recognized that a quote, particularly serious crime is a felony? Your Honor, the statute does say that an aggravated felony is certainly, any aggravated felony is a particularly serious crime. I have to tell you, and I'm happy to brief the issue if the Court desires, but I am not an expert on the particularly serious crime issue. Well, that's the burden you're here to persuade us today to take your view that it's worth considering that this is a particularly serious crime, but if we look at the facts of this case, I find it very difficult to consider that it really is a particularly serious crime. Well, all I can tell you, Your Honor, is I think decisions of this Court, and I believe Chong is one, have recognized that a particularly serious crime can be drug trafficking. Because as I recall, the definition of particularly serious crime is, and I'm paraphrasing, is a crime which is injurious to the public in general. And certainly, drug trafficking is injurious to the public in general. And in determining whether or not a crime is a particularly serious crime, and I believe this to be true, the Court is, and the Board, are not bound by the exclusions from consideration of the record, which they are bound by in determining whether, in applying the modified categorical approach. So the Board, in my belief, and hopefully I'm not incorrect, but certainly in my belief, in determining the particularly serious crime issue, the Board can look at the police report, which establishes categorically that the petitioner was convicted of a trafficking crime. Do you have any case law establishing what can be looked to by the Court in the issue of a particularly serious crime? I'm not aware of any. I'm not sure if courts have talked about that issue. I presume the Board has, but at this point in time, and I'm happy to submit another brief if the Court desires, to educate myself and the Court with respect to that issue. If I may go to the issue which I think is most important in this issue, I want to remind the Court that in deciding the case, the Court has to keep in mind that the issue does not involve the question of removability. The petitioner concedes that he's removable on account of his conviction for a controlled substance offense, 8 U.S.C. Section 1227. A2. A3. A question resolved by the Board in a decision which perhaps is not the easiest decision to understand, but in my reading of the decision is that the Board observed that the petitioner pled guilty to and was convicted of delivery of marijuana. And I think the factual record establishes that, given the complaint and given the record of conviction. But there are different circumstances where delivery can occur without remuneration. I don't know. I mean, I don't know. Isn't that the problem? If Pennsylvania law establishes that a delivery, a violation of delivery statute can be accomplished without remuneration or a small amount of marijuana, then the crime would be categorically an aggravated felony. But if Pennsylvania law says the opposite, then under Moncrieff, it would not be an aggravated felony. Haven't you inverted that? Well, I thought the categorical approach required in all its iterations to be an aggravated felony. And if in some of its iterations it's not, then Johnson wins on that point. I guess I'm stated under the modified categorical approach. All right, well, are you still arguing for remand on the aggravated felony issue or just on the particularly serious crime issue? Because it seems to me, just speaking for myself, that this Camps and Moncrieff gives you no quarter on the aggravated felony argument. Well, I believe it does, Your Honor, and let me explain. Again, the board resolved the issue by indicating that it was satisfied that the two accounts that the petitioner was convicted of, delivery and possession with intent to deliver, established sufficient trafficking elements to make it an aggravated felony. And the court held that pursuant to its precedent matter of Castro-Rodriguez, which it cited in footnote four of its decision, I believe on page four of the administrative record, that Mr. Johnson had the burden of demonstrating with proof of no remuneration and a small amount of marijuana that such conviction was not for a trafficking offense. In so finding, the BIA did not address the Department of Homeland Security's argument regarding burden of proof. Contrary to the petitioner's contention, this conclusion was not contrary to the law of the court at the time of the board's decision in 2012. The court certainly had held in Evanston that under what it terms the hypothetical federal felony analysis, the government in proving removability must demonstrate through documents which show what a criminal alien was charged and convicted of, that the alien was convicted of a crime involving remuneration and more than a small amount of marijuana. And there's nothing in the record to show either of those two? But let me continue, Your Honor. However, the court in Evanston noted that a number of appellate courts had concluded that it is the alien who bears the burden of proving no remuneration and a small amount of marijuana. But the court in, and of course, the... And then Moncrief says no. Well, but I'm talking about at the time of the board's decision, Moncrief had not yet been issued. No, but we're talking about what to do now. But what I'm saying... I apologize, Your Honor. I just don't understand how Moncrief helps you in any way. Well, what I'm saying is at the time the board issued its decision, this court had not analyzed the issue with respect to who has the burden of proof and just adverted it to its prior decisions which seemed to adopt the conclusion that the alien did not have the burden of proof. But the BIA published decision, which it cited in its opinion in this case, said that the alien bears the burden of proof, and this is before Moncrief. The board's... Let me just interrupt you for one minute, Mr. Bernstein. It sounds to me like you're trying to justify what the BIA did at the time it did it, recognizing that Moncrief hadn't been decided. But I'm suggesting to you that that's beside the point, because as I read your papers, you're seeking a remand, arguing that Moncrief is supervening authority and the board should have a crack at adjudicating this case with the benefit of Moncrief. Am I understanding your position? Yes, but... All right, then tell us why Moncrief changed the law, because the reason I suggested it is it just verified that we had it right previously in Evanson. Again, in Evanson, the court did not resolve the issue which the Supreme Court in Moncrief resolved with respect to whether or not the alien has the burden of proving remuneration and a small amount of marijuana, or the government has the burden. The board's precedent held that the alien bore that burden, and under the Supreme Court's decision in Brand X, because this court did not disapprove or hold that the courts of appeals which held that the alien had the burden, or the board's decision which held that the alien had the burden, was inconsistent with statutory language or didn't make sense. So under Brand X, the board's decision was perfectly applicable even in this court. However, once Moncrief was decided by the Supreme Court, that changed everything because the Supreme Court in Moncrief held that the determinations of the various courts of appeals, which put the burden on the alien, and the decision of the board, which put the burden on the alien, were incorrect. Thus, we have... So you're saying if the government knew then what it knows now, it would have attempted to satisfy its burden of showing that there was either remuneration or larger than a minimal quantity. What I'm saying, Your Honor, is the board, the basis for the board's decision was upset by Moncrief. And in such a situation, the only thing that the court can do is to remand so that the board has the opportunity to apply Moncrief. Isn't this a situation where you won under the more stringent standard, now we want to see if you can win under the looser standard too? I think that's ridiculous. No, we're not trying to relitigate the issue. We just want the board to determine it under Moncrief. And it's important that... But they did determine it under the more stringent. They considered it under the more stringent issue, and Moncrief has not helped you in the slightest. Well, one has to understand that Moncrief did not issue the rule of law in a case where the alien had the burden of proof. It issued the decision in a case where the government had the burden of proof, because the government had the burden of proving removability. Again, as the service argued before the BIA, and the BIA did not find it necessary to address that contention, where the alien has the burden of proving all elements to asylum... Right, but how can anybody prove anything? I mean, this seems to be a closed record. Under Descamps, we know that the categorical approach has to be applied, and if this is a divisible statute, then we go to the modified categorical approach. But we don't go to the modified categorical approach to determine what really happened here. We go down to determine under which subsection of the statute he was convicted. How could any of that change on remit? Because the question is burden of proof. If the alien has the burden of proof, then the alien must appoint to...has the... But don't we know under Moncrief he doesn't? Well, the alien has the burden of proving by a preponderance, and arguably if the... It's the government's duty to show, right or wrong, under Moncrief, the government's duty is to show that this man committed an aggravated felony. Is that right? For purposes of a removability analysis, the issue in this case does not involve removability. Even before Moncrief, when it was...the issue was the petitioner had the burden of proof. Didn't the government have a responsibility to come forward with the proof it had? And don't we look at the record today on the basis of what proof the government did come forward to at that time, whether or not it was corrected as overall appreciation of who had the burden of proof? Well, again, our position... You can't open it up and let them put in new proof, can you? Well, our position, Your Honor, is...and I don't know the answer to that question. That's for the board to decide. It's for the board to decide who's got the burden of proof. It's for the board to decide how the burdens of proof are allocated, whether or not Moncrief somehow changed the burden of proof and shoved the burden of proof back to the government in this type of situation. But that's for the board to determine, not for this Court to determine. Why can't we determine that? That's a classic question of law, is it not? Well, I think the Court is perfectly capable to do that. But the Supreme Court in two cases which we cited, and Ventura being one of them, and I believe Thomas being the other, made it clear that in the first instance where there's a question of fact or an application of fact to law, the board must be the first authority to decide the issue. Clearly, this Court, and there's no question that this Court has the intellectual capacity to resolve these questions, but the Supreme Court has directed the Courts of Appeal to remand to the Board of Immigration Appeals, where it has to make a factual or an application of fact to law determination, and perhaps in some certain circumstances... And conversely, if it's a straight legal question, we should decide it ourselves. Well, I'm not so sure that it's all that clear. I mean, certainly in Ventura and Thomas, the Supreme Court wasn't called on to make that determination, but certainly in Ventura and Thomas, the Supreme Court expressed a clear desire for the agency which Congress has delegated to make immigration determinations, to interpret the immigration and nationality statute, to make the determination, to make the first cut on these determinations. And again, because Moncrief changed the landscape in a way which rendered a decision which the board relied on, which it was perfectly entitled to rely on, null and void, the matter must be remanded so that the board can consider the full panoply of issues which are implicated by Moncrief, the burden of proof issue, the particular serious crime issue, and any other issue which is implicated by the sea change in law. Your Honors, I know that I'm out of time. I just want to point out two things. If the court decides that it does not wish to remand this case, then the board always provides a preface that the court still in fact remanded the board, but only to execute the decision of the Court of Appeals. And the second thing that I want to mention is that it goes back to the board, and if the board wishes to send it back to the IJ for further work, then the board will do that. We could instruct the board to send it back to the IJ if we so chose, which we have done in other cases. Your Honor, I'm not going to argue with the authority of this court once it's issued a decision, but I also just want very briefly to touch on what appears to be a prayer for relief in the petitioner's opening brief and the reply brief. They seem to argue that the matter should go – that the court should not only adjure the previous asylum determination, but to order that the petitioner be found eligible for adjustment of status. And in response to that – and the argument is developed – is not developed in any place, and I'm not going to argue with that. The petitioner's adjustment application was denied because the immigration judge concluded that he wasn't entitled to a waiver of inadmissibility. The petitioner certainly had the opportunity to appeal – cross-appeal, call it what you will – to the Board of Immigration Appeals, but chose not to. So at this point in time, if the petitioner's prayer for relief is a serious prayer, the board should not entertain it. Thank you, Mr. Bergstein. Thank you very much. Rebuttal, Ms. Urban. Starting with what opposing counsel just said, we're not asking the court to decide anything with regard to the adjustment of status. We're focused on the asylum issue. I'm not going to go into further detail. It sounds as though the court agrees that the law of the circuit was clear. Moncrief simply reinforced it. And there's nothing further that the Board of Immigration Appeals would need to do to consider moncrief or the aggravated felony issue on a remand. It would be a waste of resources and contrary to precedent. To the extent, however, that the government is arguing that Mr. Johnson does in fact maintain the burden of proof, it wasn't just a matter of the Third Circuit's decisions at the time the BIA originally had this case. The Supreme Court in Nijawan in 2009, cited in our brief, had also acknowledged that it was the government that had the burden of proving an aggravated felony. Mr. Johnson was responsible for proving that he was eligible for asylum, that he was a refugee, and he did that. There's no dispute that he was subject to heinous past persecution, as the IJ found in this case. Thus, he's satisfied his burden and it is only the burden of the government, as Judge Roth pointed out, to raise any other and to prove any other grounds for removing him from the country. It has not done so. As you can see from opposing counsel's argument up here, the government doesn't even have clear what potential challenges it would be raising on a remand. If the court were to remand this to the BIA for further consideration of the merits and other potential challenges, this would just be an indefinite extension of the case, with the government being allowed to raise numerous other issues with the benefit of- Well, we could control that based on how we would write our opinion. And the issue I think that's most germane now is this particularly serious crime issue. You've argued waiver, and Mr. Bernstein cited the transcripts where that issue was raised in the BIA. So how can we find a waiver? Well, Your Honor, we would argue that it's not sufficient that, at some point in passing, in the entire scope of these immigration proceedings, that the government simply used the phrase particularly serious, which is part of the statute. As counsel conceded, it never flagged this issue for the BIA. It explicitly identified- It was raised in a brief. I mean, what- It's not their fault that the BIA chose not to address it. We can't hold that against the lawyers, can we? Respectfully, Your Honor, we believe that it can. The government had the opportunity to elaborate on these issues, to cite any kind of cases, to elaborate on the statute, and it did not do so. It expressly identified the two issues that it wanted the BIA to consider, and those two issues were both different iterations of the aggravated felony issue itself, whether possession with intent to distribute marijuana is an aggravated felony. It framed it in terms of the government's burden of proof, and then it framed it in terms of Mr. Johnson's burden of proof. And as we know, under Moncrief and this Court's prior decisions, it doesn't come down to a question of Mr. Johnson proving anything. The government is the one that's responsible for showing that there was remuneration or more than a small quantity of marijuana. And I direct this Court to its decision in Duval- But that doesn't decide the eligibility for asylum issue by itself, does it? It's our position that he was deemed eligible for asylum by the Immigration Court. The I.J. decided that as a matter of discretion, because it was not an aggravated felony, he was entitled to remain in this country. And the sole issue that was presented to the BIA by the government as the appellant was whether there was an aggravated felony that served as a categorical bar. It didn't raise the particularly serious issue in any kind of detail. It was at most a passing reference. And it didn't raise any kind of discretionary determination pursuant to which the Court might conclude that he wasn't entitled to asylum. And under this Court's decision in Duval, for example, the government in immigration proceedings can be stopped when it has chosen not to raise an issue earlier in the proceeding. It's not entitled to go back yet again. And in conclusion, we'd ask that any remand in this case be with explicit instructions to the BIA simply to execute this Court's decision as government counsel acknowledged it could do. And that it order Mr. Johnson's grant of asylum reinstated so that he can remain in this country. Thank you.